IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.:

DAVE CONNER; and
VICKY CONNER,

    Plaintiffs,

v.

AMERICAN MOVERS DIRECT LLC;
ROGER COHEN; and
EXPRESS VAN LINE

    Defendants.

---

**COMPLAINT AND JURY DEMAND**

---

Plaintiffs, Dave Conner and Vicky Conner (Plaintiffs), by and through their attorneys, Lambdin & Chaney, LLP, hereby respectfully submit the following Complaint and Jury Demand, and states as follows:

**INTRODUCTION**

1.    This action seeks damages on behalf of Plaintiffs who hired Defendants for their interstate move during 2023. Through a common and uniform course of conduct, Defendants knew or should have known that they did not intend to honor their obligations under federal laws and the contracts they procured from Plaintiffs. The purpose of this action is to hold Defendants and all those involved accountable for the maximum legal and equitable relief for defrauding the consuming public.

2. The facts show Defendant American Movers Direct ("American Movers") engaged in a scheme where they hold themselves out as interstate movers to Plaintiffs. Customers typically find Defendant American Movers through online searches. Plaintiffs contacted several moving companies and provided three of them with an inventory, including Defendant American Movers. Based on this inventory, American Movers provided a quote more than two times lower than the other two movers to incentivize Plaintiffs. To further incentivize Plaintiffs, American Movers made verbal assurances that the quote included all inventory, packing, and delivery within the following week. American Movers then demanded an initial deposit of $3,000, before sending Plaintiffs' move information to one of their co-conspirators to handle the move. Then Defendant American Movers initiated the first part of their scam – the bait and switch.

3. Plaintiffs were scammed a second time when, five days before the scheduled move, American Movers requested pictures of each room and all the items to be moved. Upon receipt of the pictures, American Movers deceitfully stated there is much more than they anticipated and that the cost would be almost double the original estimate. When Plaintiffs refused the increase, American Movers worked to keep Plaintiffs on the hook by having a "manager," Defendant Roger Cohen, assure Plaintiffs he had a "dedicated" truck that could accommodate Plaintiffs belongings and complete delivery within one week. However, Defendant Cohen informed Plaintiffs that the cost would still be increased and that Plaintiffs must pay an additional $5,000 deposit, but if the movers tried to increase the price, he would work with the mover to prevent this. Based on these

false promises and the short timeframe to vacate their house before it closed, Plaintiffs agreed to stay with American Movers.

4. Plaintiffs were then scammed a third time. Two days before the move, Defendant Express Van Lines, a moving company not affiliated with American Movers, requested to inspect the inventory. Express Van Lines arrived in a Budget rental truck that could only hold 70% of Plaintiffs' items. Express Van Lines came the next day in another rental truck, loaded Plaintiffs' remaining belongings, then demanded an additional fee. Remembering Roger Cohen would work with the movers if they attempted to charge more, Plaintiffs attempted to call Defendant Cohen, who refused to answer. Fearing they would not get their belongings back and believing there were no other options, Plaintiffs reluctantly acquiesced to Express Van Lines demand.

5. This action involves the Carmack Amendment, 49 U.S.C. §14706, which imposes strict liability upon common carriers for damages to goods in transit, among other causes of action, including deceptive business practices.

**PARTIES**

6. Plaintiff Dave Conner is a citizen and resident of Firestone, Colorado, and is domiciled in Colorado.

7. Plaintiff Vicky Conner is a citizen and resident of Firestone, Colorado, and is domiciled in Colorado.

8. Defendant American Movers Direct LLC ("American Movers") is a limited liability company organized and existing by virtue of the laws of Wyoming, with a

purported office for the transaction of business at 5830 E. 2nd Street, Suite 7000 #7801, Casper, Wyoming 82609.

9. Defendant Roger Cohen ("Cohen") is a sales manager with American Movers and is a citizen and resident of Casper, Wyoming, and is domiciled in Wyoming.

10. Defendant Express Van Line is a Nevada company, with an address of 10845 Griffith Peak Drive, Suite 2-172, Las Vegas, NV 89135.

## JURISDICTION AND VENUE

11. The Court has "federal question" subject matter jurisdiction over the instant action pursuant to 28 U.S.C. § 1331, as the claim set forth herein arises under federal statute 49 U.S.C. § 14706 (the "Carmack Amendment").

12. Venue is proper under 28 U.S.C. 1391(b)(2) because a substantial part of the events or occurrences giving rise to the claims and injuries at issue occurred in this district, as Plaintiffs currently reside in Colorado after moving from Nevada.

## FACTS

13. In May 2023, Plaintiffs contacted several moving companies to inquire about their move from Henderson, Nevada to Firestone, Colorado, and informed them that their belongings needed to be packed by June 22, 2023, and delivered to their new home in Colorado by June 27, 2023.

14. Defendant American Movers' website contains the following representation:



15. Defendant American Movers and two other prospective moving companies requested an inventory to provide a quote for the move. Plaintiffs provided all three companies with the same inventory list. One company, a local family business, bid just over $17,000 to provide a dedicated truck and crew, pack Plaintiffs' belongings, and deliver everything within a week, as Plaintiffs requested.

16. Based on the same inventory list, Defendant American Movers assured Plaintiffs it could pack and load all the items on the inventory list and have them delivered to Colorado within one week for $7,800.

17. Because Defendant American Movers promised to perform the same service for less than half the price, Plaintiffs were deceptively enticed to use Defendant American Movers for their move. Plaintiffs, believing they were about to hire a moving company, agreed to hire Defendant American Movers and paid $3,000 by check as an initial deposit.

18. On June 16, 2023, Defendant American Movers contacted Plaintiffs and asked for pictures of each room and item to be moved. A few hours after Plaintiffs provided the pictures, American Movers called Plaintiffs and told them that Plaintiffs had a lot more than what was estimated, so the truck space needed to be increased from 1,910 cubic

feet to 2,350 cubic feet and the estimate would be dramatically increased from $7,800 to $15,000. Plaintiffs found the significant increase unacceptable, and tried to cancel the move.

19. Later that evening, Defendant Roger Cohen, a "manager" at American Movers, called Plaintiffs to inform them that he had a "dedicated" truck in Las Vegas that was big enough to handle all of their belongings, that they would pack everything on June 22, and they would deliver everything in the same truck on June 26 or 27. Defendant Cohen also informed Plaintiffs it would cost $13,434.34, and that if the crew attempted to charge more to call him immediately and he would handle it.

20. With limited time because Plaintiffs had already sold their Nevada home and had to vacate it by June 23, Plaintiffs signed this new agreement, that also required them to pay another $5,000 deposit to American Movers. Plaintiff paid this deposit via check.

21. Four days later, on June 20, Defendant Express Van Lines called Plaintiffs and requested to look at Plaintiffs' inventory. During this conversation, Defendant Express Van Lines indicated they had received the job from American Movers and would be losing money from the move because they do not receive compensation from American Movers. This was the first time Plaintiffs learned that American Movers would not be completing the move and that the $8,000 already paid to American Movers was merely their fee for finding an actual mover.

22. Defendant Express Van Lines arrived at Plaintiffs' Nevada home on June 20 in a Budget rental truck that could only hold 1,950 cubic feet. Express Van Lines could

only load approximately 70% of Plaintiffs' belongings into this truck, stating Plaintiffs had more items than what was agreed upon. Express Van Lines then showed up on June 21 with another Budget rental truck to load Plaintiffs' remaining items and demanded an additional $3,870.

23. Plaintiffs remembered that Roger Cohen instructed them to call him if the movers tried to charge more, so Plaintiffs attempted to call Defendant American Movers; however, a third-party answering service answered Plaintiffs' call. Plaintiffs explained their issue and asked to speak with Roger Cohen. The woman on the phone said she could not transfer her call to American Movers, but that she could take down Plaintiffs' information and have American Movers call them right back. No one ever called Plaintiffs.

24. At this point, Defendant Express Van Lines had packed all of Plaintiffs' belongings and stated that Plaintiffs' belongings would not be moved and would be kept in an unidentified storage unless Plaintiffs paid the increased price. To keep their belongings from being held hostage and because there was no time to hire another mover before their Nevada house closed, Plaintiffs were forced to pay Express Van Lines $4,467.12 via check. This was only the first half of the required delivery fee. In order to receive their belongings after delivery, Express Van Lines demanded Plaintiffs pay another $4,467.12 in cash.

25. Plaintiffs continually tried to reach Roger Cohen through text and email for help. On June 22 Roger Cohen finally responded via text and asked what the issue was. Plaintiffs explained that Defendant Express Van Lines was failing to uphold the terms of the move. Specifically, Express Van Lines would not complete delivery until July, was not

using a dedicated truck that could hold all of Plaintiffs' belongings, and was charging an additional $3,800. Plaintiff Vicky Conner also expressed worry that the extreme delay in delivery would cause her to lose her job. Defendant Cohen's only response to all of Plaintiffs' issues was that Plaintiff Vicky Conner would not lose her job.

26. When Plaintiffs asked Defendant Cohen if he had any other response to their issues, which he previously promised he would handle, Defendant Cohen's merely responded that delivery times were not guaranteed and that the price can increase if more items are added. Defendant Cohen also stated neither he nor American Movers ever lied to Plaintiffs.

27. On July 4, 2023, one full week after the promised delivery date, Plaintiff received a delivery of their belongings; however, this was only a partial delivery. The rest of Plaintiffs' belongings would not be delivered until July 20.

28. Upon inspection of their belongings, Plaintiffs found many items damaged and some of their more expensive belongings missing altogether.

29. In total, Plaintiffs were scammed out of thousands of dollars during their nightmare move. Plaintiffs were initially quoted $7,800 to complete the entire move within Plaintiffs' requested timeline, but they were deceptively coerced to pay even more than that to Defendant American Movers for a few phone calls and broken promises. Plaintiffs were also forced to pay an additional $8,934.24 to Defendant Express Van Lines to prevent their belongings from being held hostage, and even then, Plaintiffs did not receive their belongings within their promised deliver time, and many items were broken or missing.

# CLAIM FOR RELIEF

## Count One: Carmack Amendment

30. Plaintiffs repeat each and every allegation above as though fully set forth herein.

31. Defendants, as carriers and brokers, and their agents and employees, had duties under the Carmack Amendment, 49 U.S.C. §14706, to properly and carefully load, handle, stow, carry, keep, care for, discharge, and deliver the household goods carried in the same good order and condition as when tendered to and accepted and to provide a bill of lading.

32. Defendants assumed responsibility, and were responsible, for the care and custody of the goods from the place of initial receipt to the place of intended delivery.

33. Defendants breached their duties under the Carmack Amendment by failing to properly and carefully load, handle, stow, carry, keep, care for, discharge, and deliver the goods carried in the same good order and condition as when tendered an accepted, and have refused to deliver the goods.

34. By reason of the foregoing, Defendants were a receiving and/or delivering carrier and broker within the meaning of the Carmack Amendment, 49 U.S.C. §14706, and breached their duties under that statute and/or under the contract of carriage.

35. The Carmack Amendment holds all such carriers and owners of carriers liable, for which all individual Defendants are personally liable.

36. As a direct and proximate cause of Defendants' breaches under the Carmack Amendment, Plaintiffs suffered damages of $16,934.24, which was not the

result of any contributing, acts, omissions, negligence, or breach of contract on the part of the Plaintiffs.

37. Defendants are jointly and severally liable for any and all damages for their violations of the Carmack Amendment, and the Carmack Amendment imposes strict liability for any breach.

**Count Two: Disgorge Profits**

38. Plaintiffs repeat each and every allegation above as though fully set forth herein.

39. The unlawful conduct of all Defendants named herein constitutes deceptive, fraudulent, and wrongful conduct.

40. By virtue of their wrongful conduct, all Defendants received money from Plaintiffs, profited from these illegal transactions and must return all such fees that rightfully belong to Plaintiffs, as their unlawful conduct warrants they disgorge all such monies, with interest, thereon.

**Count Three: Breach of Contract**

41. Plaintiffs repeat each and every allegation above as fully set forth herein.

42. Plaintiffs entered into a contract with Defendants, and fully complied with their side of the contract.

43. Defendants materially breached the Contract by damaging their property and not returning the property in the same condition as it was on the date of moving.

44. As a direct and proximate cause of the breaches, Plaintiffs been damaged in an amount to be proven at trial.

**Count Four: Permanent Injunction**

45. Plaintiffs repeat each and every allegation above as though fully set forth therein.

46. U.S.C. Federal Rules of Civil Procedural 65 grants district courts the power to grant injunctions, which can be permanent, and declaratory relief is also permitted.

47. Plaintiffs and the consuming public suffer irreparable injury in the absence of an injunction that the Defendants violated numerous DOT and Federal and state laws by using false advertising, failing to provide Plaintiffs with proper Bills of Lading, and deliberately confusing the public as to who is a broker or carrier and which LLC is controlling the move.

48. Remedies at law, such as monetary damages, are inadequate to compensate for the injury because Defendants' misconduct leads to the loss of irreplaceable antiques and heirlooms that are not precisely quantifiable for the Plaintiffs and consumers at large. The balance of hardships tip in Plaintiffs' and all consumers' favor as undoubtably no one can put a price on family heirlooms and antiques handed down from generations, because once damaged, lost, or stolen because of the frauds perpetuated by Defendants, they can never be replaced. Consumers use these Defendants to protect their goods, not steal them.

49. The public has an interest in not being deceived by Defendants, who failed to protect Plaintiffs' property by damaging and/or losing it and engage in deceitful business practices.

## PRAYER FOR RELIEF

*WHEREFORE,* Plaintiffs demand judgement against Defendants as follows:

A. An order declaring as unlawful the conduct alleged to be a deceptive sales practices and violations of the Carmack Amendment, as well as related federal laws, and enjoining Defendants from engaging in unlawful business practices as alleged herein;

B. An order awarding Plaintiffs restitution or other equitable relief as the Court deems proper, including consequential damages;

C. An order awarding Plaintiffs pre-judgment and post-judgment interest;

D. An order awarding Plaintiffs reasonable attorneys' fees and costs of suit, including expert witness fees;

E. An order and judgment awarding such other and further relief as the Court may deem just and proper and fair.

## TRIAL BY JURY IS DEMANDED

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a jury trial on all trial issues raised by this Complaint.

DATED this 30th day of January, 2024.

*s/ L. Kathleen Chaney*
L. Kathleen Chaney, #29358

LAMBDIN & CHANEY, LLP
4949 South Syracuse Street, Suite 600
Denver, CO 80237
(303) 799-8889
(303) 799-3700 (facsimile)
Email: *kchaney@lclaw.net*;

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of January, 2024, a true and correct copy of the foregoing **COMPLAINT AND JURY DEMAND** was filed with the Clerk of the Court using CM/ECF system which will send notification of such filing to the following e-mail addresses:

*s/ L. Kathleen Chaney*
L. Kathleen Chaney, #29358

LAMBDIN & CHANEY, LLP
4949 South Syracuse Street, Suite 600
Denver, CO 80237
(303) 799-8889
(303) 799-3700 (facsimile)
Email: *kchaney@lclaw.net*
